## 1374.   CAUSEY LUMBER COMPANY v. CONNOR.

1. There being no evidence that the lien of the attachment for purchase-money had been discharged by the proceedings in bankruptcy, the plaintiff's right of recovery was not affected. The bankruptcy court has the right either to preserve or to set aside claims of lien against the bankrupt's estate. But where an adjudication in bankruptcy is relied upon to destroy an existing lien, whether the point be made by the trustee in bankruptcy, or by any other party at interest, the burden is upon him who asserts the affirmative to show that the bankrupt court has set aside the lien. An adjudication in bankruptcy does not necessarily avoid existing liens against a bankrupt's estate. On the contrary, such liens may be set up and established in the bankrupt court.

2. The evidence authorized a finding that the sale by the defendant in attachment to the claimant was not bona fide; and, consequently, the judgment rendered was not erroneous.

Levy and claim, from city court of Abbeville—Judge Nicholson. April 4, 1908.

Argued November 24, 1908,—Decided March 16, 1909.

Rehearing denied July 31, 1909.

J. T. Hill, for plaintiff in error.    D. R. Bruce, contra.

RUSSELL, J.  Connor sold to Braswell 72,500 feet of lumber. The contract between them was that Braswell was to cut, haul, and saw the lumber out of Connor's trees, and pay Connor $2 per thousand feet for the lumber thus manufactured. The writer is of the opinion that this was a sale of lumber, and not of timber; but this is immaterial, because it is not disputed that Braswell had sawed 72,500 feet of timber under the contract. On October 3, 1907, Connor sued out an attachment for purchase-money of the 72,500 feet of lumber, which on October 4 was levied on about 5,000 feet of lumber at Braswell's sawmill, and on some 20,000 feet which was on the right of way of the Seaboard Air-Line Railway in the town of Seville. To this levy the Causey Lumber Company, on October 11, 1907, interposed a claim. Subsequently, at the appearance term, Connor filed a declaration upon his attachment, and, on January 20, 1908, Braswell filed a plea in abatement and moved to dismiss the suit, upon the ground that he had been adjudicated a bankrupt on September 28, 1907. The case came on to be heard on January 20, 1908, and was submitted to the judge without the intervention of a jury; and on April 4, 1908, the judge entered up a judgment in favor of the plaintiff against the defendant, on

the attachment, and also entered up a judgment in the claim case, finding the property subject to the attachment. The claimant excepted to this judgment.

Upon the trial the plaintiff testified, that he sold the defendant the lumber on certain land at $2 per thousand feet, to be measured when sawed, and to be paid for as measured; that the defendant was indebted to him $145 for the purchase-price of 72,500 feet of pine timber at $2 per thousand, and that the 25,000 feet of timber levied on was a portion of the lumber manufactured from the timber cut by the defendant from the plaintiff's land and sold by the plaintiff to the defendant; that at the time that the attachment was levied, about 20,000 feet of the lumber levied on was on the right of way of the Seaboard Air-Line Railway; and this was the 20,000 feet which the claimant had claimed. Another witness also identified the lumber upon the right of way of the Seaboard Air-Line Railway as having been cut from Connor's timber. It appeared also, that after the attachment was levied, the defendant was still in possession of this lumber, and that he loaded it upon the cars of the Seaboard Air-Line Railway and took a bill of lading in his own name to the 20,000 feet of lumber. The defendant and E. B. Causey, the manager of the claimant company, both testified, that the defendant sold the lumber in question, on September 24, 1907, to the claimant, and that the claimant paid him in cash for the same. The price at which the lumber was bought by the claimant from the defendant does not appear in the testimony, nor does it appear when the cash was paid. The defendant also testified, that he was adjudged a bankrupt on October 22, 1907, and that the trustee was duly appointed and qualified to take charge of, and did take charge of, his estate.

1. We will first dispose of the plea in abatement filed by the defendant. Of course, this plea has no place in the claim case, for in a claim case the defendant is merely a nominal, and not a real party. The whole issue in a claim case is whether the property which it is sought to subject to the demand of the plaintiff is or is not the property of the claimant; and it is no concern of the claimant whose property it may be if it is not his own, although he has the privilege of showing, in order to defeat the plaintiff's levy, that the right of the property is not in the defendant. The defendant's plea in abatement, therefore, has no place in a claim case.

We imagine that the reason why it was considered by the lower court is that it was apparent that the attachment and the claim case were both considered together. We will, therefore, consider the plea in abatement as applicable to the attachment case, and as having been only so considered by the lower court. The court properly found against this plea, for the reason that the bankrupt court may either invalidate existing claims of lien, or validate and enforce them. Proof that Braswell had been adjudged a bankrupt amounted to nothing, unless it went further and established that Connor's lien for purchase-money had been discharged by the adjudication in bankruptcy. Furthermore, if Braswell had been adjudged a bankrupt, it is for the trustee in bankruptcy, and not for this claimant, to assert that Connor's lien for purchase-money had been invalidated by the adjudication. Indeed the trustee may still, in a proper proceeding, show that the adjudication in bankruptcy discharged the lien claimed by Connor, and that the levy of the attachment fell on account of the adjudication in bankruptcy. The ruling of the judge of the city court, while not upon the same point, is controlled by the principle announced in *Marshall* v. *English-American Loan & Trust Co.*, 127 *Ga.* 376 (56 S. E. 449), except that in this case there are additional points involved.

2. Having properly entered up judgment against the defendant in attachment, the judge of the city court came next to determine the claim case. We think that in this the question of the defendant's bankruptcy cuts no figure whatever, and we think the evidence upon the subject of the claimant's purchase did not so demand a finding in favor of the claimant as to authorize a reversal of the judgment of the judge of the city court, upon the facts, finding the property in dispute subject. It is true that both the claimants' witness and the defendant testified that the lumber in question was bought ten days before the levy of the attachment, but there are in the evidence such badges of fraud that the court was not required to believe that there was a complete sale. All of the circumstances lead rather to the conclusion that the contract of purchase was only executory. At the time of the levy of the attachment Braswell was still in possession of the lumber on the right of way of the Seaboard Air-Line Railway. He loaded it into the cars, and, after loading it, he took the bill of lading in

his own name. He was insolvent at the time of the levy, having been adjudged a bankrupt six days prior to that time. These are facts affirmatively shown. The omissions are not less significant. Causey testifies that at the time he bought the lumber he did not know that Connor had a levy or any claim against it. He does not testify that he did not know that Braswell had been adjudged a bankrupt. He does not testify what price he paid for the lumber, or that he gave a fair market price for it. He does not say, nor does Braswell, that the payment in cash for the lumber was made at the time of the purchase, or that it was made prior to the time that the Causey Lumber Company gave bond; and he admits that except in this case the Causey Lumber Company always measured the lumber that it bought, before the trade was completed. We find no error in the finding of the judge of the city court.

*Judgment affirmed.*